## McDaniel vs. Grace et al.

It is a general principle of the common law, that the laws of the place, where real property is situate, exclusively govern in respect to the rights of the parties, the modes of transfer, and the solemnities, which should accompany them: and so, a married woman, residing in Louisiana, can convey lands in Arkansas only in the manner prescribed by the statute. *Chapter* 37, *Digest of Arkansas.*

If a married woman can make a power of attorney, authorizing her husband to execute a deed for her, conveying her interest in land situate in this State, the execution of the power should be acknowledged by the wife, in the same mode in which the statute requires her to acknowledge the execution of a deed.

*Quere:* Can a wife constitute her husband an agent to sell and convey her estate or interest in land?

59ᴇʙ

It is necessary that a power of attorney to authorize the execution of a deed by an agent should be under seal.

A deed of conveyance of the wife's land, executed by the husband in the name of himself and wife, under a power of attorney from the wife, without seal, and not in express terms authorizing the conveyance of any land or interest in land, is null and void, as an act of the wife, and does not pass to the grantee any interest of hers whatever in the land.

The husband is entitled to curtesy in the wife's real estate, only where there is issue born alive, and a seizin in fact as well as in law, except in the case of waste, uncultivated lands not held adversely; and so, the husband would not have curtesy where the land is held by another adversely, and is the subject of litigation until after the death of the wife.

The right of the husband to curtesy has been extended by modern decisions; and it is now settled in equity, that he shall have curtesy of a trust as well as in a legal estate; of an equity of redemption, a contingent use, or money to be laid out in land: but not in a pre-emption right of the wife in the public lands of the United States.

A plea, to an action upon a bond, setting up as the consideration of the bond, a sale and conveyance by the husband in the name of himself and wife, under a power of attorney from the wife, of her interest, as heir, in a pre-emption right to public land, shows that the bond was wholly without consideration.

Where the vendee takes a deed for land without covenants of warranty, and the title fails, he cannot, on that account, avoid the payment of the purchase money, unles fraud, or its equivalent, has been practiced upon him. But where he has taken a deed with general covenants of warranty, and there is a total failure of title and an eviction, or its legal equivalent, the purchaser may avail himself of the plea of failure of consideration.

Where a note or bond is executed without consideration, or upon a consideration that has failed; and, subsequently, another security for the same debt is given in exchange or substitution, the original want or failure of consideration follows and attaches to the new security.

A replication is not subject to the objection of duplicity on account of the statement of several facts constituting but a single reply to the plea; nor where several matters are set up, one of which only is a good reply to the plea; and, as a general rule, all matters not responsive to the plea, may be struck out as surplusage.

Where the replication to a plea of failure of consideration states the circumstances under which the bond sued upon was executed, and which are no answer to the plea, but concludes with the averment, "that there was another and different consideration for the execution of the bond than that which is alleged in the defendants' plea; and there was a good and valid consideration in law for the execution of the instrument sued on;" such averment will be treated as an issue to the plea, and all else considered as stricken out as surplusage.

*Appeal from the Circuit Court of Jefferson County.*

Hon. J. C. MURRAY, Circuit Judge.

YELL, for the appellant. In a plea of failure of consideration, the facts must be set out wherein it has failed. *Dickson vs. Burk,* 1 *Eng.* 412; *Cheney, use, &c. vs. Higginbotham,* 5 *Eng.* 273. Such plea must aver a complete failure. *Willit vs. Forman,* 3 *J. J. Marsh.* 292.

A plea, admitting consideration, but denying its validity in law, is not supported by proof of no consideration, or a failure of consideration. *Coyle vs. Fowler,* 3 *J. J. Marsh.* 472.

This must be a plea admitting consideration, but denying its validity in law: and if it cannot be supported by proof of failure of consideration, or no consideration, it is no bar to plaintiff's right to recover, and will be held had on the demurrer to the replication; for if proof cannot be given to support it, it is insufficient in law.

A plea, in all instances, alleging a failure of consideration, must set out clearly wherein the failure consists. 3 *J. J. Marsh.* 5; *ib.* 22; *ib.* 94; *ib.* 234.

PIKE & CUMMINS, contra. The law of the place where lands lie, governs as to the forms and solemnities to be observed in the conveyance thereof, and as to all contracts to convey. *Story Confl. of L., p.* 300, 303, 306, 358 *to* 362.

*Ch.* 37, *secs.* 10, 12, 16 *and* 21, *Rev. Stat.,* prescribes the solemnities to be observed in the conveyance of real estate, situate in Arkansas, by married women.

The power of attorney and deed in this case, were not so executed as to convey the interest of Mrs. Hooper. 1 *Hill. Ab.* 54, 55. A mere contract to convey her lands by a married woman, is void, even if these documents could be construed to amount to that. 1 *ib., p.* 55, *sec.* 16.

But the power here (if under our statute the husband could act as agent for his wife in the conveyance of lands) does not relate

to lands, nor authorize the husband to contract in relation thereto. Every power should be strictly construed. *Story on Agency, p.* 75, *et seq.; sec.* 62, *et seq.* Upon these grounds, there was a clear total failure of consideration.

The plea is good, according to the principles adjudged in *Smith vs. Henry,* 2 *Eng.* 207.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

This was an action of debt, brought by James McDaniel, in the Jefferson Circuit Court, against William P. Grace and Robert E. Waters, upon the following obligation :

"$1200.   On the 1st day of March, A. D. 1852, we promise to pay Elias Hooper, the sum of twelve hundred dollars, for value received of him.   Witness our hands and seals, this March 31st, A. D. 1851.

GRACE & WATERS,    [SEAL.]"

Which was assigned by Hooper to Moses Belcher, on the 1st day of April, 1851; and, on the next day, assigned by Belcher to the plaintiff.

The defendant, Waters, pleaded *non est factum*, to which plaintiff filed a special replication.

The defendant, Grace, obtained oyer of the obligation sued on, and the assignments thereon, and filed a special plea in bar, in substance, as follows:

That, on the 13th day of July, 1850, at the county of Jefferson, the said Elias Hooper, the payee, in the bond mentioned in the declaration, applied to the defendants, Grace & Waters, and then and there represented, declared and stated, that he and Mary E. Hooper, his wife, and their children—the only children and heirs of the said Mary E.—were citizens and residents of the State of Louisiana, and were domiciled there, as was true; and that the said Mary E. was one of three children, and sole heirs of one Nathan Cloyes, and as such owned, and was entitled in her own right, and exclusively, except as to such rights as said Elias ob-

tained and had therein in virtue of his marriage with her, or such interest as the widow of Nathan Cloyes might have therein as her dower, to one undivided third part of a certain pre-emption right, or claim, under the pre-emption laws of Congress, which said Nathan Cloyes, in his lifetime, had, and held in, and to a certain tract of land known and designated as the *north-west fractional quarter of section two, township one north, of range twelve west,* situate in the county of Pulaski, in the State of Arkansas, and lying immediately east of the Quapaw line. That said Elias or Mary E. never had, and have no other right or claim to the said land, other than such as was, as aforesaid, cast upon the said Mary E., as one of the heirs of the said Nathan Cloyes. And the said Elias then and there offered to sell and convey to the said defendants, in fee, all the right, title, interest and claim of the said Elias and Mary E., in and to the land aforesaid, in due form of law, for the sum of $2,500, and the defendants agreed and contracted to pay the said sum of $2,500 to the said Elias Hooper, in consideration, and only for and in consideration of the transfer and conveyance, in due form of law, in fee simple, to the said defendants, by the said Elias and Mary E., of all their right, title, interest and claim in and to the land aforesaid. That said Elias then and there, pretendedly, in pursuance of said contract, for himself, and for his wife, pretending to be duly authorized and empowered thereto, by the said Mary E., his wife, executed and delivered to the defendants, a pretended deed for said land, as follows—the same being signed and sealed by the said Elias for himself, and by him in the name of his wife, and by no one else, or in any other manner executed by his wife, who was not present, to wit:

"Know all men by these presents, that we, Elias Hooper, and Mary E. Hooper, wife of said Elias Hooper, of Claibourn Parish, State of Louisiana, for and in consideration of twenty-five hundred dollars, to us in hand paid, have this day bargained, sold, and conveyed, and by these presents do bargain, sell, and convey, unto William P. Grace and Robert E. Waters, of the State

of Arkansas, county of Jefferson, all of our right, title, interest and claim in and to, and out of the following described tract or parcel of land, *to wit:* the north-west fractional quarter of section numbered two (2), in township numbered one (1) north, of range numbered twelve (12) west, and extending to the adjoining partition, which land was formerly adjoining the town of Little Rock, east of the Quapaw line, but a portion of it is now included within the town or city of Little Rock, said land being situate in the county of Pulaski and State of Arkansas, together with all the privileges and appurtenances, buildings and dwellings of every description whatsoever thereto belonging. To have and to hold the aforesaid interest to them, their heirs and assigns forever; and we, the said Elias Hooper and Mary E. Hooper, do, and our heirs shall warrant and defend the above described premises unto the said William P. Grace and Robert E. Waters, against the lawful claims of all persons claiming by or through us. In testimony whereof, we have hereunto affixed our hands and seals, at Pine Bluff, this 13th day of July, A. D. 1850.

ELIAS HOOPER,  [Seal.]

MARY E. HOOPER,  [Seal.]

By E. Hooper, Attorney in fact."

Test :

J. C. Murray,

Peter German.

STATE OF ARKANSAS, }
County of Jefferson. }

Be it remembered, that this day personally appeared before me, an acting and duly commissioned justice of the peace, in and for the county of Jefferson, and State aforesaid, Elias Hooper, who, on producing a power of attorney from his wife, authorizing him to act for her, in her name acknowledged that he had made and executed the foregoing deed of conveyance, for the uses and purposes and considerations therein expressed, and desired me to certify the same, which is hereby accordingly done, this the 13th day of July, A. D. 1850.

PETER GERMAN, J. P."

The plea makes profert of the above deed and acknowledgment, and continues :

And then and there, said Elias acknowledged said deed before Peter German, then a justice of the peace of said county, in the manner and form shown by the certificate to said deed annexed, and not otherwise : and the same was never, .in any manner, or at any time, acknowledged by the said Mary E. : and said defendant further avers, that when the said Elias made said contract to convey said land, and when he made said deed, and acknowledged the same as aforesaid, he had no other written power or authority from the said Mary E. to act for her, than that conferred upon him by an instrument in the words and figures following, to wit:

STATE OF LOUISIANA, )
PARISH OF CLAIBOURN.    )

Be it known, that this day before me, J. H. Cunningham, Parish Recorder, and ex-officio Notary Public, in and for the State and Parish aforesaid, duly commissioned and sworn, and in the presence of the subscribing witnesses, personally came and appeared Mary E. Hooper, wife of Elias Hooper, formerly Mary E. Cloyes, both residents of the State and Parish aforesaid, who declared that she had made, constituted and appointed, and by these presents do make, constitute and appoint, and in her place and stead put, and depute Elias Hooper, my husband aforesaid, he being present and authorizing the same, and accepting the same, my true and lawful attorney, for her and in her name, and for her use, to ask, demand, sue for, recover and receive all such sum or sums of money, debts, goods, wares, dues, accounts and other demands whatsoever, which are, or may be due, owing, payable and belonging to her, or detained from her by any manner, or ways, or means whatsoever, or in whose hands soever the same may be found; and also to pay and discharge all sums of money due and owing by her to any person, or persons whatsoever: giving and granting unto her said attorney, by these presents, my full power, authority, in and about the premises, to have, sue and

take all lawful ways and means in her name, and for the purpose aforesaid, and upon the receipt of any such debts, dues or sums of money, acquittances, or other sufficient discharges for her and in her name to make, seal and deliver. And generally, all and every act or acts, thing or things, whatsoever, needful and necessary to be done in and about the premises, for her and in her name to do, execute, and perform as fully, largely, and amply to all intents and purposes, as she myself might, or could do, if personally present; and attorneys, one or more, under him for the purpose aforesaid, to make and constitute, and again to revoke, at pleasure, hereby ratifying and allowing all and whatsoever, her said attorney shall lawfully do. This done and passed in my office, in the Parish of Claibourne aforesaid, in presence of W. W. Manning and Jacob Darsh, witnesses of lawful age, and domiciliated in said Parish; who hereunto sign their names, together with said parties, and me, the said Parish Recorder, on the twenty-ninth (29) day of June, in the year of our Lord one thousand eight hundred and fifty (1850).

    (Signed,)                     MARY E. HOOPER.
                                             ELIAS HOOPER."

ATTEST:

    W. W. MANNING, ⎫
    JACOB DARSH.    ⎬

    [L. S.]             J. C. CUNNINGHAM,
                *Recorder and ex-officio Notary Public.*

Notarial seal.

The plea makes profert of the above instrument, and continues: And the said instrument was executed in the said State of Louisiana, and the same never was signed, sealed or acknowledged by the said Mary E., otherwise than appears on the face of the said instrument. That, soon after the date of the aforesaid deed, the said Mary E. departed this life, leaving her surviving, her lawful children, who were and are minors. That when the foregoing contract for the sale of said land was made, as aforesaid, the said

land was, and ever since has been, held adversely by various persons claiming under a title adverse and hostile to the supposed title of said Mary E. and Elias, and they, or either of them, never gave, pretended, or had the power to give the possession of said land, or any part thereof, and said defendants, or either of them, never have been in possession of any part of said land, and have never received any rents or profits therefrom. That said Elias, or the said Mary E., or any one whomsoever, have never, in any manner whatsoever, conveyed, or attempted, or offered to convey, to the said defendants, or either of them, any interest or title whatever, in or to the said land, or any part of it, other than such as might have been vested in them by virtue of the deed and power of attorney aforesaid. Defendants aver and submit, that they, or either of them, in consequence, or in virtue of the deed and power of attorney aforesaid, did not acquire any title whatever in or to the interest, title or claim of the said Mary E., in and to the said land, or any part thereof; and at the time, and during her life, she, and since her death, her children and heirs, have been, and still are, the owners in fee of her interest and share in the claim and title in said land. That, in pursuance of the said contract for the sale of said land, and in full reliance on the good faith and honesty of the said Elias in the premises, on the date of the deed aforesaid, defendants paid down to said Elias the sum of $1,250, parcel of the consideration agreed to be given for the fee in said claim, and the title to the said land; and to secure the residue of the price agreed to be given for the same, and for no other cause or consideration whatever, executed and delivered to the said Elias, their bond for the sum of $1,250 payable about the first day of March, A. D. 1851; and after the same became due and payable, to wit: on the 31st day of March, 1851, the defendants paid said Elias the sum of $50, parcel thereof; and, in lieu and substitution of said bond, and for no other new or different consideration whatever, the said Wm. P. Grace made, sealed and delivered to the said Elias Hooper, the said bond in the declaration mentioned. And so the defendant submits that

60BB

the said contract in respect to the said land aforesaid, has become, and is void, and at an end, by reason of the imposition practiced upon said defendants in respect thereof; and by reason of the failure of the said Elias and Mary E., or any one else, to transfer and convey to the said defendants, or either of them, the fee in and to the claim or land aforesaid; and the consideration, whereon only the said bond sued on was based and founded, has failed, and said defendants ought not to be charged therewith"—concluding with a verification and prayer for judgment, &c., and sworn to by said Grace.

A demurrer to this plea having been overruled, the plaintiff filed a replication thereto, as follows:

"*Precludi non*, because the plaintiff says, that although the said defendants, on the 13th day of July, 1850, made and entered into a certain contract with Elias Hooper, the payee in the note sued on, &c., and that said Elias and Mary E., his wife, were residents of the State of Louisiana; and that the said Mary E. was one of the children and heirs of Nathan Cloyes; and that she was entitled to the one-third interest in and by virtue of a certain pre-emption right or claim, by virtue of the laws of Congress, which the said Nathan Cloyes, in his lifetime, had and held in and to the land described in said plea; and that said Elias never had and held any other interest than the interest aforesaid, and never pretended to have and hold any other right and interest in said land, except the right and interest which they had, and did fully convey to the said defendants all their rights, title, claim and interest to the land aforesaid, for the consideration of $2,500, and that the said defendants were fully apprised of all the rights that the said Elias Hooper and wife had in and to the land aforesaid, and all that they pretended to have; and all and every part of their rights were fully made known to said defendants at that time; and at the time it was fully made known to said defendants, that said lands were in litigation, and that there was risk in the purchase of said right; and hence, said right was sold for the small sum of $2,500; and the said defendants both being lawyers,

and understanding fully the claim and rights of the said Elias and wife, to said land; and the said Elias, then and there, fully exhibiting his power of attorney, from his wife, Mary E., to him, to sell and convey her interest therein, and after fully examining the same, with a knowledge of all the facts, made the purchase; and that said deed and said power of attorney, copied into said plea, are true copies of the power and deed then made; and that they conveyed all the rights of the said Elias and wife, that ever were agreed to be conveyed; and that the said deed fully contains the contract and fulfils the same; and that they never pretended to convey, and never contracted to convey, any thing but the half-interest of the said Elias and the said Mary E., in and to the land aforesaid; and if there were any mistakes, it was wholly and solely the fault of the defendants, for they drew the said deed to their own satisfaction — and the said Elias never made" any pretence, in any manner whatsoever, but exhibited his power of attorney; and the defendants agreed to give $2,500 for their own interest, and were to risk all the consequences of the suit then pending. (a.)   And if there were any defects in the said deed or power of attorney, the said Mary E., during her life, and the said Elias, were willing to make them good; and if they were not rectified, it was solely owing to the defendant's laches and neglect—and that said Mary E. never acknowledged said deed in said plea mentioned, except as alleged in said plea; and if there is any defect or illegality in said acknowledgment, or signing, it was wholly and solely owing to the laches and neglect of the said defendants, for they both being lawyers, held that said signing and acknowledgment of said Mary E., was good and valid in law, and fully accepted the same, informing the said Elias and Mary E. that the same was good and valid in law; and that they, the said defendants, never desired the same altered or amended during the said Mary E.'s lifetime.   And that said land, so conveyed as aforesaid, is held adversely, and was so held at the time of making said deed; and that said Grace & Waters were fully advised of the manner in which said land was held when the said contract

and deed were made; and made the contract aforesaid with a full knowledge of adverse claims to the said land. The said Elias and Mary, his wife, never conveyed, and never have been desired or requested to convey, and never were, by said contract, to convey any other interest than that mentioned in said deed; and if the right of the land aforesaid has vested in the heirs of the said Mary E., it was, and is, owing entirely to the laches and neglect of the said defendants, in representing the conveyance aforesaid to be good, and in receiving and holding the same to be good and valid until the death of the said Mary E. [b]. And the plaintiff admits that the said defendants paid the sum of $1,250, as the said plea alleged, and that Grace & Waters then executed their note or bond to the said Elias for the sum of $1,250, due about the time in said plea alleged, and after the same became due and payable, and shortly previous to the 31st of March, 1851, at the county of Jefferson, the said Grace, acting for himself and Waters, made, and entered into, a new and other agreement with ——— Sloton, the agent of the said Elias Hooper, and sold and conveyed a certain tract of land in the county of Jefferson to said Hooper, and then and thereby paid off and took up the said twelve hundred and fifty dollar note, so due and payable as in said plea alleged—the numbers and description of the land are unknown to this plaintiff—and afterwards, the said Grace, acting for himself and Waters, canceled the said trade and the conveyance of the land aforesaid, and took into his possession the said contract, deed and papers of the conveyance of the lands aforesaid, with the said Elias Hooper, and took up the said papers, and the same have not been recorded, and are now in the possession of the said Grace—and afterwards, *to wit:* on the 31st day of March, 1851, for the consideration of the said land, conveyed as aforesaid by Grace to Hooper, and for and in consideration of the canceling of said trade, which was a new trade and contract, and entirely different and new from the contract first entered into by the said Elias and wife, and the said defendants, the said Grace acting for himself and Waters, on the 31st March, 1851, executed to the

said Elias Hooper, the said note or bond in said plaintiff's declaration mentioned, and for a valuable consideration, him thereunto moving. And so the said plaintiff says, that there was another new and different consideration for the execution of the said bond, than that which is alleged in said defendant's plea; and there was a good and valid consideration in law for the execution of said instrument sued on. And so the said plaintiff says the contract, mentioned in said defendant's plea, is not void; and, if it is, it is by the neglect, laches, and misrepresentations of the defendants, Grace & Waters, and not the fault of Hooper and wife, or of the plaintiff—and the plaintiff says there is another good, new, and valuable consideration, for which the said bond in the plaintiff's declaration described, was given—and, of this, the said plaintiff puts himself upon the country."

To this replication, the defendant, Grace, demurred, on the following grounds:

1st. Said replication is argumentative.

2d. Said replication is double.

3d. It tenders issues that are double, and not single, &c.

The court sustained the demurrer to the replication, the plaintiff rested; and final judgment was rendered, discharging both defendants; and plaintiff appealed to this court.

The counsel for the appellant insists that the demurrer to the replication reaches back to the plea, and that it is bad, because the facts set up in it, do not show a total failure of a consideration for the bond sued on.

By *sec.* 75, *chap.* 126, *Digest,* the consideration of a bond may be impeached by special plea, in the same manner as unsealed instruments; and by *sec.* 3 *chap.* 15, *Digest,* such defence may be interposed, by the maker, as against an assignee of the obligation.

In *Wheat, use, &c., vs. Dotson,* 7 *Eng. Rep.* 699, this court held that, to an action on a bond for the purchase money of land, a partial failure of consideration is the subject of recoupement, when the partial failure is in the quantity or quality of the land;

but otherwise, when the partial failure is in the title. That no defect of title, that does not amount to a total failure of consideration, can be set up as a defence to a suit for the purchase money: and perhaps not even then (the Judge, delivering the opinion, remarks) without eviction.

Intending, in the sequel, to attempt to show to what class of cases the rule applies, that the vendee may retain the purchase money, by showing a total failure of title and eviction, or its equivalent, we will, in the first place, endeavor to determine whether the plea in question sets out such facts as show a total failure of consideration.

Did the deed executed by Hooper, under the power of attorney from his wife, pass to Grace & Waters her interest in the land, which was the subject of the contract?

The general principle of the common law is, that the laws of the place where real or immovable property is situate, exclusively govern in respect to the rights of the parties, the modes of transfer, and the solemnities which should accompany them. *Story's Conflict of Laws*, sec. 424, p. 708. Also, as to the capacity of the contracting parties. *Ib.* sec. 430, 431.

The plea, in this case, alleging that the land, which was the subject of the contract, lies in Arkansas, our laws must govern its transfer, and not the laws of Louisiana, where, it is alleged, Mrs. Hooper resided.

By the common law, a married woman could only convey her real estate by a fine or common recovery—she could not convey by deed. 2 *Kent Com.* 150; 1 *Hilliard on Real Prop.* 121; 2 *ib.* 271; *Dart's Vend. & Purch. of Real Prop.* 270, and cases collected in *Note.* 1. But, by statute, 3 *and* 4 *Wm.* 4, c. 74, a wife may convey by deed, with the husband's consent, and with a private acknowledgment. *Same authorities last cited.*

In most of the States of this Union, provision has been made, by statute, for the wife to convey her estate, by deed, with the consent of the husband, and the private examination of a magistrate. 2 *Kent Com.* 152, 153, 154.

By *sec.* 10, *chap.* 37, *Digest of the Statutes of Arkansas*, it is provided that, "A married woman may convey her real estate, or any part thereof, by deed of conveyance, executed by herself and her husband, and acknowledged and certified in the manner hereinafter prescribed."

*Section* 21, of the same chapter, provides that, "The conveyance of any real estate, by a married woman, or the relinquishment of dower in any of her husband's real estate, shall be authenticated and the title passed, by such married woman voluntarily appearing before the proper court or officer, and, in the absence of her husband, declaring she had, of her own free will, executed the deed or instrument in question, or that she had signed and sealed the relinquishment of dower for the purposes therein contained and set forth, without compulsion or undue influence of her husband."

*Section* 13 enumerates the officers who may take such acknowledgments in, or beyond the State; and *section* 16 requires the officer, taking the acknowledgment, to endorse a certificate thereof upon the deed.

Inasmuch as a married woman could not, by the common law, convey her estate by deed, and can only do so by virtue of such statutes, it seems that a substantial deviation from the form prescribed by the statutes, will render the deed invalid. 1 *Hilliard on Real Property*, 122; 2 *ib.*, note (*a*); *Dart's Vend. & Purch. of Real Estate* 270, note (1); *Thompson vs. Peebles' Heirs et al.*, 6 *Dana* 387; *Steel vs. Lewis*, 1 *Monroe* 48; *Harvey vs. Peck*, 1 *Munf.* 518; *Martin vs. Dwelly*, 6 *Wend.* 9; *Fowler vs. Shearer*, 7 *Mass.* 14; *Jackson vs. Stevens*, 16 *John. Rep.* 110; *Jackson vs. Cairns*, 20 *ib.* 310; *Depeyster vs. Howland*, 8 *Cowen* 277; *Lasseter vs. Turner*, 1 *Yerger Rep.* 413.

In *Elliot et al. vs. Peirsol et al.*, 1 *Peter's Rep.* 338, the court said : "By the principles of the common law, a married woman can, in general, do no act to bind her; she is said to be *sub potestate viri;* and subject to his will and control. Her acts are not like those of infants, and some other disabled persons, voidable

only : but are, in general, adsolutely void, *ab initio*. In Virginia and Kentucky, the solemn modes of conveyance by fine and common recovery, have never been in common use; and, in those States, the capacity of a *feme covert* to convey her estate by deed, is the creature of statute law: and to make her deed effectual, the forms and solemnities, prescribed by the statutes, must be pursued."

To the same effect, is *Hepburn vs. Dubois*, 12 *Peters* 345.

We think it may safely be said, upon the weight of these authorities, and many others of like effect, referred to in them, that had Mrs. Hooper joined personally in the execution of the deed in question with her husband, without acknowledging its execution before the proper officer, on a separate examination substantially in the mode prescribed by our statute, the deed would have been null and void as to her and her heirs.

It must be equally unquestionable, that, if she could make a power of attorney authorizing her husband to execute the deed for her, the execution of the power should have been acknowledged in the same mode in which the statute requires her to acknowledge the execution of the deed itself; otherwise, the whole purpose of the statute might be defeated by resorting to powers of attorney, and a wide door opened for impositions upon married woman. In this case, the execution of the power was not so acknowledged.

But could Mrs. Hooper empower her husband to convey her interest in the land, as her agent?

DART, in his work on *Vendors and Purchasers of Real Estate*, says any assurance of a married woman's interest in real estate, executed under a power of attorney, seems to be inoperative.

In Vermont, by statute, the wife may convey her estate, by deed of herself and husband, and her separate examination and acknowledgment are made necessary, and required to be certified upon the deed. In *Sumner vs. Conant*, 10 *Vermont Rep.* 9, land was devised to Martha Wentworth, wife to John Wentworth, and she and her husband executed a power of attorney to an agent to

convey the land, and the power was executed, but the court held that the conveyance did not pass her interest in the land, because she could not make the power. There, as by our statute, the right of persons generally to convey by power of attorney, is recognized; but, upon principle, it was held that the provisions of the statute, in reference to conveying by power of attorney, did not apply to married women.

In *Birdsly vs. Flint*, 3 *Barbour's Sup. Court Rep.* 510, it was said that a married woman could not appoint an agent. That, if she were, under her hand and seal, to appoint her husband her agent to dispose of her land, and he were to act under the power, the contract would be void at law, and the appointment of an agent to do a void act, would be void also.

In *Steel vs. Lewis*, 1 *Monroe* 48, the court said that until the passage of the act of assembly, on the subject, on the 1st of February, 1812, there was no provision existing in Kentucky permitting a *feme covert* to convey by letter of attorney, and hence the conveyance of her estate, by power of attorney, prior to that time, passed no title.

In a note to *Greenl. Cruise, vol.* 2, *p.* 24, it is said that the wife cannot convey by attorney. See also, *Linsley vs. Brown,* 13 *Cowen Rep.* 192.

STORY, in his work on *Agency, sec.* 6, *p.* 7, 8, says, "Married women ordinarily are incapable of appointing an agent or attorney; but where a married woman is capable of doing an act, or transferring property or rights, with the assent of her husband, there, *perhaps*, she may, with the assent of her husband, appoint an agent or attorney to do the same. So with regard to separate property, she may, *perhaps*, be entitled to dispose of it, or to incumber it, through an agent or attorney; because, in relation to such separate property, she is generally treated as a *feme sole*. I say, *perhaps*, for it may admit of question, and there do not seem to be any satisfactory authorities directly in point.

Whether a married woman may join with her husband in making a power of attorney, acknowledging it in due form on a

61BB

separate examination, authorizing the sale and conveyance of her interest in land, by an agent, is a question that does not arise in this case, and is not intended to be decided: but *that* she can constitute her husband an agent to sell and convey her estate, in view of the above authorities, and upon principle, is exceedingly questionable.

Aside from this, the power of attorney set out in the plea, in this case, does not contain any words, importing an intention on the part of Mrs. Hooper, to empower her *husband* to sell and convey any *land*, or interest in *land:* and it would require a latitudinous construction, not warranted by authority, to derive any such power from the language used in the instrument. See *Story's Agency, chap. VI.*

Moreover, the power of attorney is not under the *seal* of Mrs. Hooper, which is necessary to authorize the execution of a deed by an agent. *Story's Agency, section 49, p 49; ib., sections 291, 252.*

On the grounds above stated, the deed executed by Hooper, in the name of himself and wife, under the power of attorney, as set out in the plea, was null and void, as an act of Mrs. Hooper, and did not pass to Grace & Waters any interest of hers whatever in the land. As to her and her heirs, the deed was not only void at law, but the authorities above cited show that a court of equity would not compel her, or them, to a specific performance of the contract.

But it may be said that the deed was valid as the act of Hooper, the husband, and conveyed to Grace & Waters any interest he may have had in the land; and, therefore, constituted some consideration for the bond sued on.

According to the allegations of the plea, what interest had he in the land?

Where the wife is seized of an inheritance in land, the husband is entitled to the rents and profits during their joint lives. *2 Kent Com.* 129.

But, in this case, the plea alleges that at the time Hooper con-

tracted to convey to defendants, and afterwards, to the death of the wife, the land was in possession of others, claiming under adverse titles, and that defendants derived no rents and profits therefrom.

Was Hooper a tenant by the curtesy?

We have no statute on the subject ·of the ·curtesy of the husband in the wife's land.

By the common law, *tenancy·by the curtesy*, is an estate for life, created by the act of the law. When a man marries a woman, *seized at any time during the coverture*, of an estate of inheritance in severalty, in coparcenary, or in common, and hath issue by her born alive, and which might, by possibility, inherit the same estate as heir to the wife, and the wife dies in the lifetime of the husband, .he holds the land during his life, and it is immaterial whether the issue be living at the time of the seizin, or at the death of the wife, or whether it was born before or after the seizin. 4 *Kent Com.* 289; 1 *Hilliard* 110, 111.

Four things are requisite to an estate by the curtesy, viz: *marriage*, *actual seizin* of the wife, *issue*, and *death* of the wife. *Ib.*

The wife, according to the English law, must have been seized in *fact* and in *deed*, and not merely of a seizin in law of an estate of inheritance, to entitle the husband to his curtesy. 4 *Kent* 30.

The circumstances of this country have justly required some qualification of the strict letter of the rule relative to a *seizin in fact* by the wife; and, if she be owner of waste, uncultivated lands, *not held adversely*, she is deemed seized in fact, so as to entitle the husband to his curtesy. The title to such property draws to it the possession; and that constructive possession continues in judgment of law, until *adverse possession* is clearly made out. 4 *Kent* 30; *Jackson vs. Sellick*, 8 *John. Rep.* 262; *Green vs. Siter et al.*, 8 *Cranch* 229; *Davis et al. vs. Mason*, 1 *Peters Rep.* 503.

In New York, the husband of a woman who is either heir or devisee, but has never entered, shall not have curtesy. It is said

the requisition of actual seizin is limited to these two cases, and is not applicable where the wife claims under a deed. 1 *Hilliard* 112, *sec.* 8; *Adair vs. Lott*, 3 *Hill* 182; *Jackson vs. Johnson*, 5 *Cowen* 98.

The plea, in this case, sufficiently shows the marriage of Hooper and wife, issue, and the death of Mrs. Hooper. It alleges a want of seizin in fact, and possession of the land by others, claiming under adverse titles, at the time and ever after Hooper contracted to convey to Grace & Waters; but it fails to allege that there was no seizin in fact prior to that time and during the coverture. The plea undertakes to show a total failure of title and consideration, and should have shown that there was no seizin in fact, or its legal equivalent, at any time during the coverture, provided the seizin in law was sufficient.

Does it show a want of such seizin in law as to cut off the husband's curtesy? In other words, does *curtesy* attach to a preemption right in land?

There is no such estate in land, known to the common law, as a pre-emption right. It is the creature of statutes, passed by Congress, to encourage the settlement of the public lands. It is a preference right to purchase land of the government, arising where the settler has complied with all the conditions prescribed by law, to entitle him to such preference. It seems, from the allegations of the plea, that Nathan Cloyes had such a pre-emption right in the tract of land in question; and that by his death, it was cast, by descent, upon Mrs. Hooper, and his other heirs.

It seems that the right of the husband to curtesy has been extended by modern decisions.

In *Davis et al. vs. Mason*, 1 *Peter's Rep.* 507, the court said: "A husband, formerly, could not have curtesy of a use, that is, where his wife was *cestui que use*, (*Perkins, Curtesy, fo.* 89), and this continued to be the law down to the time of BARON GILBERT (*Law of Uses and Trusts* 239): at present, it is fully settled in equity, that the husband shall have courtesy of a trust, as well as a legal estate, (2 *Vern.* 536; 1 *P. W.* 108; *Atk.* 606;) of an equity

of redemption; a contingent use, or money, to be laid out in land."
And so says Mr. KENT, 4 *Com.* 22–30.

It may be safe to follow such lights as far as they go, but it
is the part of wisdom, perhaps, to stop where the lights give out.

We have not been able to find any decision that the husband
is entitled to curtesy in a pre-emption right of the wife, and we
are not disposed to be the first to break new ground in his be-
half.

The conclusion is, that taking the allegations of the plea to be
true, as on demurrer, Grace & Waters took nothing by Hooper's
deed to them, and that the consideration, upon which the bond
sued on was executed, wholly failed; and that the plea, if unan-
swered, is a bar to the action.

The replication to the plea, is next to be considered.

That the substantial allegations and matters of the plea might
have been put into a more condensed form, is not to be denied;
and that its redundancy furnishes some excuse for the unusual
character of the replication, which is more like an answer to a
bill in chancery, than a common law instrument of pleading, is
equally true

That the replication contains much surplusage, is unquestion-
able.    But surplusage, by which is meant matter that is altogether
superfluous, does not, in general, vitiate the pleadings, even in
point of form: the maxim being *utile per inutile non vitiatur*.
In such cases, the unnecessary matter will be rejected by the
court, and the pleadings will stand, as if it were *struck* out, or
had never been inserted.    *Gould. Plead., chap.* 3, *sec.* 170.    But
where a party pleads unnecessary matter, which shows that he has
no cause of action, or no legal defence, the matter thus pleaded
will be fatal to that which would, otherwise, have been good.
*Ib., sec.* 171; *Martin et al. vs. Warren et al.*, 6 *Eng. R.* 285.

As to duplicity in the pleadings, which follow the declaration,
the rule of the common law is, that every plea, or replication,
must be *simple, entire, connected, and confined to a single point*,
i. e., a single ground of complaint or defence.    *Gould. Plead.,*

*chap.* 8, *part* 1, *sec.* 3.    But the single point, to which plea, replication, &c., is required to be confined, need not, as of course, consist of a *single fact;* for several connected facts may be, and frequently are, necessary to constitute a single complete ground of demand or defence.   *Ib.,* sec. 9; 1 *Chit. Plead.* 649–50.

Duplicity, in a plea or replication, consists in its containing two distinct matters, either of which would be a bar to the action, or answer to the plea.    If a replication contain several distinct matters, but one of which is an answer to the plea, the others may be stricken out as surplusage.   *Kellog & Kenneth vs. Miller & Rogers,* 1 *Eng. Rep.* 468.

If the replication in this case contains no answer to the plea, the demurrer to it was properly sustained.   If it contains one distinct and good answer to the plea, the demurrer should have been overruled, the surplusage stricken out, and the defendant required to respond to the balance.   If the replication contains two or more distinct matters, either of which is a good answer to the plea, it would be subject to the objection of duplicity, but what would be the effect of such duplicity, under our practice, need not be decided in this case, unless it be found that the replication in question is double.

In view of these general rules, the replication will be analyzed.

It is difficult to separate it into distinct parts, in consequence of the fact that several matters are repeated, in different forms, in several places, in the replication.

But the whole replication may be divided, for convenience of analysis, into three parts :    1st, from the beginning to the letter [a] in brackets; 2d, from *a* to (b); 3d, from *b* to the conclusion.

*Part 1st,* in substance, after admitting various allegations of the plea, in reference to the contract, seems to be intended as a denial of all fraud and misrepresentation on the part of Hooper, in making and executing the contract for the sale of his wife's interest in the land, with the defendants — with affirmative averments that he acted in good faith, exhibiting his power of attorney to act for his wife, to defendants, " who were lawyers ;" and

that the interest of himself and wife in the land, and the condition of the land, were truly represented, &c.

There are some allegations of misrepresentations and imposition in the plea, not as to the interest of Mrs. Hooper in the land, nor as to the condition of the land in regard to adverse titles, but as to Hooper's power to sell and convey the interest of his wife.

Had these allegations in the plea been so material that the plea would have been bad without them, a denial of them, in the replication, would have been a good answer to the plea.

In order to a full understanding of what is understood to be the gist of the plea in this case, it may be well, at this point, to attempt to show to what class of cases the rule applies, that the vendee may retain the purchase money, by showing a total failure of title and eviction, or its equivalent.

Where a party contracts for, and receives a deed without covenants of warranty, and the title fails, he cannot, on that account, avoid the payment of the purchase money, because he has not thought proper to protect himself by obtaining covenants of warranty, unless fraud, or its equivalent, has been practiced upon him. *Rawle on Covenants for Title*, 607, 608, *and cases cited*.

But where the purchaser has taken a deed, with general covenants of warranty, and there is a total failure of title and an eviction, or its legal equivalent, and the vendor sues for the purchase money, the purchaser may avail himself of the plea of failure of consideration, and will not be forced to pay the money, and then resort to a cross action upon the covenants of his deed to recover it back. See *Rawle on Covenants for Title*, caption "THE PURCHASER'S RIGHT TO DETAIN THE PURCHASE MONEY," ETC., *p.* 604 *to* 732, where the authorities on this subject are collected, and clearly and ably reviewed.

In this case, the plea does not allege that defendants contracted for a deed with covenants of warranty, but simply for a deed conveying the interest of Mrs. Hooper and her husband in the land. Had such a deed been legally executed to them, they could not have resisted the payment of the purchase money, on the

ground that the pre-emption right failed, or turned out to be invalid, without alleging and proving that fraud was practiced upon them in making the contract. In that case, fraud would have been the gist of the plea, and its denial, a good replication.

But, in the case now before us, the gist of the plea is, that there was a failure on the part of Hooper to make to defendants a legal and valid conveyance of the interest which he contracted to convey to them in the land: and hence, the allegations of fraud are immaterial, and their denial or avoidance in the replication, mere surplusage.

*Part 2d.* A number of the allegations in *part 2d*, of. the replication, are substantially the same as those embraced in *part 1st*, above disposed of. There are two features, however, in *part 2d*, that require consideration. *First*, It is alleged, in substance, that if the deed, executed by Hooper to defendants, was defective, Mrs. Hooper, during her lifetime, and her husband, were willing to execute a valid deed, but that defendants did not desire or demand it. But no tender of a valid deed to the defendants is averred.

According to the decision of this court, in *Smith vs. Henry*, 2 *Eng. Rep.* 207, overruling *Byers & Miniken vs. Aikin*, 5 *Eng.* 419, and *Drennen vs. Boyer & Clark*, *ib.* 497, it was the duty of Hooper to tender to defendants a valid conveyance, before he was entitled to the purchase money. This feature of the replication is no answer to the plea.

The *second* feature of *part 2d*, of the replication, avers, in substance, that defendants accepted the deed executed to them by Hooper, with a full knowledge of the character of the power of attorney, under which he acted for his wife, and that they retained said deed, without objection as to its validity, until after the death of Mrs. Hooper.

The plea alleges that Hooper contracted to make to defendants a valid conveyance, and failed so to do. Does it excuse him for failing to comply with his contract, that defendants, as well as himself, perhaps, were mistaken in reference to his legal power

to act for his wife, and on account of such mistake, accepted an invalid deed?

Hooper was as much bound to know the law as the defendants. If he knew in fact that he had no legal power to act for his wife, he perpetrated a fraud on the defendants in attempting to convey for her. If he did not know that he had not legal authority to act for her, he simply labored under a mistake of the law. The defendants had no motive to cheat themselves, by accepting an invalid conveyance; and must, therefore, have acted also under a mistake. The mistake, then, to put it upon the fairest ground for Hooper, was mutual, and can hardly furnish an excuse for his failure to comply with his contract. See *The State vs. Paup et al.*, 13 *Ark. Rep.* 129.

*Part 3d.* The third and last division of the replication alleges, in substance, that, at the time the contract was made, defendants paid Hooper $1,250, and gave him their bond for $1,250, balance of the purchase money, as alleged in the plea. That, after the maturity of the bond, Grace, by agreement with the agent of Hooper, sold and conveyed to him, a certain tract of land, and thereby paid off and took up said bond; that afterwards, Grace, acting for himself and Waters, canceled said trade, and the conveyance of the land aforesaid, and took into his possession his title papers, &c.; and, thereupon, for the consideration of said land so conveyed by him to Hooper, and for, and in consideration of the canceling of said trade, &c., executed to Hooper the bond sued on: "and so the plaintiff says that there was another new and different consideration for the execution of the said bond, than that which is alleged in defendant's plea: and there was a good and valid consideration in law for the execution of the instrument sued on."

Treating this part of the replication as setting up affirmative matter in avoidance of the plea, it is not good.

Had the bond for $1,250, which Hooper held upon the defendants, been executed upon a valid consideration, and binding upon them in law, and had they paid it by transferring to Hooper a tract of land, and afterwards thought proper to cancel the con-

62BB

tract, take back the land, and execute a new note for any amount that might have been agreed upon in consideration of the canceling of the contract, doubtless the new note would have been upon a good and sufficient consideration.

But, according to the allegations of the plea, the bond for $1,250, executed by Grace & Waters to Hooper upon the original contract, was for a consideration which had totally failed, and they were not legally bound to pay it. If they paid it by transferring a tract of land to Hooper, as alleged in the replication, they got nothing for the land: and if they gave the bond sued on to get the land back, they gave it for what, in contemplation of law, belonged to them, as they parted with the land in the first instance without any consideration.

But disregarding, as surplusage, every thing in the replication but the words: "*The plaintiff says that there was another and different consideration for the execution of the said bond, than that which is alleged in the defendant's plea: and there was a good and valid consideration in law for the execution of the instrument sued on*," concluding to the country; and there is a substantial issue to the plea, denying, in effect, the truth of its allegations, and putting the defendant upon his proof.

The plaintiff might have put in a replication denying the truth of the material allegations of the plea in detail; or he might have adopted a more brief and comprehensive form, and denied, in general terms, that the bond sued on was executed upon the consideration alleged in the plea, or that the consideration, upon which it was executed, had totally failed, in manner and form, as alleged in the plea. Either of these modes of replying would have put the allegations of the plea at issue, and have been more direct, perhaps, than the language above copied.

The replication in this case is certainly not skilfully drawn, and departs widely from those nice logical rules, which constitute pleading a science; and though there is much surplusage in it, yet, under the rule that the bad does not vitiate the good, the demurrer to it was improperly sustained. See *Johnson et*

*al. vs. Killian,* 1 *Eng. Rep.* 172; *McCoy et al. vs. Hill,* 2 *Littell Rep.* 372.

The judgment will be reversed, and the cause remanded, with instructions to the court below to overrule the demurrer to the replication, and permit the plaintiff to amend the same, if he thinks proper; and, if not, to treat it as an issue to the plea, regarding every thing else as stricken out as surplusage.

---

NOTE BY THE CLERK.—Mr. Justice WALKER announced that he dissented from so much of the opinion as decided that the replication *should be treated as an issue to the plea; but neglected to file a written opinion.*